Good morning. My name is Cynthia Kagiwara, and I'm representing Defendant Appellant Randall Char on appeal. There are two issues before the court today regarding Mr. Char's sentencing, the first having to do with whether 1B1.10 should apply to him, and the second having to do with whether or not the district court's consideration of the substantial assistance motion is feasible. With respect to the 1B1.10 issue, my opponent has briefed the court on the recent case of Rodriguez-Soriano, and I note that a petition for re-hearing and suggestion for re-hearing on Bonk was filed yesterday in that case. So I'm happy to address the court as to either way. If the case is upheld, it believes that the same type of arguments would apply to Mr. Char, which we've conceded. However, the government never filed a cross-appeal, and so under green law, this court should not be able to send it back to enlarge Mr. Char's sentence, even if Rodriguez-Soriano is held to apply. What really were you asking for? Well, before Rodriguez-Soriano came down, we were asking for the court to apply 1B1.10 as directed by Dillon, and first follow 1B1.10, do the comparative reduction set forth in that guideline. When the case got sent back down by a prior panel, I thought the panel just vacated his sentence and told the district court judge to do it over. Well, the district judge did not treat it that way. But that's what the mandate. Right. The district judge essentially resentenced Mr. Char and then considered whether he should be eligible for this motion to reduce his sentence under 1B1.10. If the court, and even if... Let me ask you one question. If the judge, if the sentencing had just taken place for the very first time on the second, that was the very first time he'd ever been sentenced, would he have gotten the benefit of the reduction in the guideline at that time? If I could just clarify, are you asking if he had been resentenced? No, no, no, forget resentencing. If he had just been sentenced for the very first time... If he had been sentenced for the very first time in 2015... Yes. Yes. He would have gotten the benefit of the reduction. Well, my argument would be that he should have then gotten the reduction of 1B1.10 regardless, because it would be unfair to treat him differently than any other defendant just based on the timing of when he was sentenced. I've made this argument in another case where it's an equal protection violation to treat somebody differently just because they were sentenced on a later date than November 1st, 2014. This guideline reduction applies to defendants who were sentenced before November 2014, and if 1B1.10 is applied, those defendants do stand to benefit even if they had a mandatory minimum in cases where they provided substantial assistance. This kind of is tied into the whole argument of whether in Rodrigo Soriano... Let me ask you this. Your whole argument turns on whether Soriano is good law or not good law. Is that the... Well, I'm happy to address whether or not... I mean, I believe if it's good law, that's kind of the end of our argument on 1B1.10. And then in that case, though, I do not believe that the court can send it back to the court to reimpose the higher sentence. But if Rodrigo Soriano continues, we concede that that would have to be the result, because Mr. Charles... So are you still asking for... Are you still... So when the district judge rejected the recommendation to go down, it was 120 months? Yes, correct. Is that still in play from your perspective? Yes, because that's a separate argument. How does that fit in? Okay, well, because the government had argued for a reduction down to 120 months, the district court procedurally erred by not giving substantial weight to the government's recommendation. The district court essentially just substituted its own opinion for that of the government. Well, the government's, it's a recommendation. Correct. But, you know, the guideline does say under 5K1.1 that the court should give substantial weight to the government's recommendation. Let me ask you, is it your position that we could theoretically send this case back down? Tell the district court judge, you've got to give better reasons for why you rejected the government's recommendation. But whatever you do, you can't impose a sentence higher than 100, what is it, 44 months? 144 months. Is that your position? I think that's correct, because the government did not file a cross appeal, and Greenlaw and this court and Bill Tran-Moreno are very clear that when the government doesn't do that, Mr. Char should be able to anticipate that he's going to receive nothing higher than the 144-month sentence. So the only possible way he could get a lower sentence would be for us to tell, to conclude that when the judge rejected the 120-month reduction, only went for half, that he still hasn't given adequate reasons, even though he tried his best, I gathered, he made an effort to tell us what he was doing. Right, right. I mean, I agree that the judge did give further reasons at the resentencing hearing as to his reasons. However, I think the problem is, you know, the district court originally said, I'm treating Mr. Char as if he testified at this trial. And then on resentencing, he said, he didn't testify, so he shouldn't get that much benefit. So right there, those two things are inconsistent. But the other thing is, the district court's reasoning still seems to be arbitrary. He just said 10 years is too much, in my opinion. Well, he also said, though, that he was looking at what he actually did, not what he was offering to do. And so he discounted the substantial assistance and said, I'm going to consider what he did. The other is, I don't know if he used the word speculative, but that was the rationale. So are you saying it's a procedural error, or it's a substantive reasonableness error, or both? I'm saying that it's both. Okay. And was there an objection at the time? Do we review this for plain error, or what? Well, there were objections all along to the court not following the 120-month recommendation. But about the reasons, was there an objection to his stated reasons? There was not a specific objection on the record to his stated reasons. However, it was clearly argued at sentencing that he should be given full credit. And I just want to address, too, the district court said, I can look at what he did, I can see the end result, and therefore I can determine what that's worth. But the problem, I think, is he doesn't know what Mr. Char did behind the scenes. And he doesn't know how much he worked with people behind the scenes, the nature and extent of his cooperation, the risk that he put himself at. Didn't the government sort of outline that, or did they just sort of, you know, just not say anything other than we stand by our recommendation? I think the government essentially said we stand by our recommendation. Did they sort of bolster it with some facts? Not really, no. Did they let the judge know why they didn't call him as a witness? That was not discussed in the courtroom. However, it is a matter of record. I know it is, but did the judge know that the reason he wasn't able to testify was the government's decision? I'm not sure about that, Your Honor. And the other thing was he was willing to go undercover. He actually did for a while, and then the target got suspicious. And apparently that had nothing to do with Mr. Char's behavior. It's just whatever. And so that deal didn't go through. Did the judge hear anything about those circumstances? Not other than what was briefed in the government's initial motion for a downward departure. That, in fact, it didn't go through because the suspect bailed out. Correct, correct. And in terms of Mr. Char not testifying as a witness at that multiple defendant trial, he did show up several days. Oh, I know he did. I just wondered what the judge knew. Right, and that case had several problems. I'm sorry, I realize I'm out of time. That case had several problems where they were having problems with getting their evidence in, and that case actually resulted, as a matter of record, in several acquittals, including acquittal for the defendant that Mr. Char was supposed to testify against. I'll give you a minute for rebuttal. Okay, thank you very much, Your Honor. May it please the Court, my name is Marian Purcell. I'm an assistant U.S. attorney representing the United States in this matter. I'm afraid I probably should begin where the Court left off and admit that I am not fully familiar with the details of the defendant's cooperation. You were not the AUSA below? I was not the AUSA below. That AUSA has left the office. And I am not fully familiar with that. I am familiar with, of course, the transcripts, and it seems to me that the assistant U.S. attorney has an obligation and met his obligation to provide the information that he believed was appropriate to the Court, and the Court had the information the Court had. See, what's really troubling here is that the government comes in with a recommendation and the judge seizes upon the fact that he didn't actually do all the things that he was willing to do. And what's troublesome is Mr. Char wasn't responsible for those decisions. He was prepared to do it. And it doesn't seem fair, particularly given this fellow's record otherwise and circumstances, to say, well, too bad the government didn't call you even though you were in court, and too bad going undercover didn't produce anything because the suspect bailed out. It's not within his control. Your Honor, that's true, but that's real life, unfortunately. Well, it may be real life, but the fact is, why did the judge then discount it? Your Honor, many, many, many defendants have good intentions. He acted on them. He acted. He was in court. He acted on them. And he did meet with the suspect, right? But the statute and the guidelines reward substantial assistance. They don't award good intentions. They don't reward trying. That's the way the system is set up. And there's a good reason for that. Well, they reward the nature and extent of cooperation, right? So under 5K1.1, substantial assistance to the government includes not only the usefulness of the assistance, which is what the district court really seemed to focus on when it said that he didn't produce, but it also considered the risk that the defendant took, the danger that he placed himself and possibly his family in. It also includes the nature of his assistance, the extent of that assistance. So going undercover, as you well know, poses unique risks. And also it includes the completeness and reliability of that. I think that's why the government is really in a unique position to fully evaluate the extent of his cooperation and the worth of those various factors and make a recommendation to the court. Did the court adequately evaluate all of those factors? Or on the record, as you review it, he really focused too much on whether the defendant actually produced results or not? Your Honor, he reduced the sentence by 25%. And that is a very significant number. It's less than 50%. Do you know whether the government's recommendation to 120 months took into account the fact that the government didn't dismiss the 851 in this case? I do not have any insight into the reasoning that took place at the time on the part of the U.S. Attorney's Office. We know from the transcript that the Assistant U.S. Attorney asked the court essentially to back off that 851 information. I would just be speculating to say any more than what's in the transcript. What does that mean, to back off the 851? Because if the 851 had not been filed, then the mandatory minimum would have been 120 months. And that was the sentence that the Assistant U.S. Attorney was asking for. Right, and that's what I'm getting at. Does your office sometimes dismiss the 851 enhancement as part of the reward for substantial assistance to the government? Not ordinarily, Your Honor. That would not be ordinary behavior. That's within the office's discretion. It's certainly within the discretion of the office, but it would not be an ordinary behavior. So my question to you is that in this particular case, the AUSA chose not to dismiss the 851 enhancement. So that left his sentence at 20 years, right? And so the AUSA worked from that to say, okay, 10 years down departure is substantial. But that takes into account the fact that we didn't dismiss the 851 enhancement. Was that part of the analysis engaged in by the office, number one? And number two, was that in any way relayed to the court? I'm sure nothing was relayed to the court that is not in the transcript. So I'm sure the answer to that is no. I'm sorry, but I cannot provide any insight into the thinking of the office with respect to not dismissing the 851. I can say that as a general proposition, once it's filed, it's very rarely revoked. But sure, we have the discretion to do it if we chose to do it. And again, I would only be speculating. If I were in those shoes, I might think, gosh, the sentence should be at least 10 years. If I take away that 851, then the court's going to go down from 120 months, and that's really too low. That might have been part of the thinking, but I can only speculate. I wasn't there, and I've asked people, and I've not gotten an answer to that. Does your office frequently or is it rare to make a recommendation of 10 years on a 5K1.1 reduction for substantial assistance? I mean, that's a lot. It's a lot. Ten years is a hefty reduction, and that must be the only reason I could. When I read that, I thought they really must have thought he provided substantial assistance or they wouldn't have made this recommendation. That's a really significant recommendation. It is, and I would think it's about as taking half off is a very, very significant reduction. And again, I can't provide insight into what the actual thinking was. All I can do, as all your honors can do, is look at what the record shows. And the record shows that the assistant U.S. attorney did, in fact, ask for a very substantial reduction. The district court looked at all of the factors that it had available to it and concluded that, in fact, 180 months should be the new mandatory minimum. And I want to focus on that a little bit because we haven't really talked about the fact that once the court decided that the downward departure should only go to 180 months, that then became a floor. This court's case law makes clear that the next step after that is to consider whether he should get that entire downward departure based on the 3553A factors, which he decided it should. And so he's sentenced originally to 180 months. And the major issue before the court, I think, is that, in fact, when the resentencing occurred after the remand to the district court, he should not have gone below that 180-month floor. And perhaps that's been conceded, but I think it's important to go back to that fact, that the 180 months became an actual floor. But you didn't cross-appeal on that? We did not cross-appeal. And I should emphasize, of course, that we understand that this court absolutely cannot raise the sentence. That's not the issue. The issue is, could this court remand for a lowering of the sentence? And our position is that that is not possible on these facts because it's something that, again, we haven't focused on here. If we thought that the district court judge didn't give enough consideration to the government's recommendation, why couldn't we remand it back for that and say you can't impose a sentence higher than 144, but you could go below, you could go to the recommendation? Well, I think, Your Honor, simply because it's not substantively unreasonable. But that's just recognizing a procedural error. Your Honor, I don't think I can emphasize enough that there was no procedural error here. If this court, if this district court, when it reviewed all of these factors, could be reversed on these facts, I don't know what he could have done to explain his reasoning any more clearly. And, Your Honor, your point is there, if anything, it's a procedural error. It's not substantively unreasonable to go down 25% where an individual has tried hard but didn't actually testify, didn't actually produce a new case. It's not substantively unreasonable. So the only question really could be, did he explain it well enough? And I don't know what more we can ask from a district court than what was done here. How about the government? You say you're not familiar with the, whatever motivated or was in the mind of the AOSA in the courtroom. What if the government were to go back and amplify on why they had recommended the 120 months and fight for the recommendation more aggressively? I think, Your Honor, that the position that the government takes in a downward departure motion  And the government did what it believed was appropriate here. Well, that's not answering my question. My question is, I understand all that, but there's one thing to say. We've recommended this, Your Honor, and we think it's justified. Or, Your Honor, we think it's justified and let me tell you why it's really justified in this unique case and so on and so forth. Your Honor, the government is not asking for that relief. And I can't think of any basis short of the government having cross-appealed and asked for that relief. I can't think of a basis for this court to order that to occur. Well, okay. We'll see about that. Wow, I didn't realize I was that much out of time. Thank you, counsel. Thank you. Well, in a short one-minute rebuttal, if there's anything you want to bring to our attention. Thank you to the court. Thank you for the additional minute. I just wanted to point out that it's slightly disingenuous for the government to have argued before the district court that Mr. Charge should receive 120 months and now is fighting very hard to maintain this 180-month sentence that the court imposed. As Ms. Purcell pointed out, she was not the U.S. attorney through sentencing or resentencing. In fact, the U.S. attorney left the office the day of resentencing. In this case, it was his last day. And I believe that the court is correct that the government should amplify their reasons for why they recommended the 120 months. Ms. Purcell has indicated that she doesn't really know what the reasons were for that. And the reasons are not amplified in the transcript either. Are there any further questions from the court? No, thank you. Thank you. Thank you, counsel. We appreciate your arguments in this matter and it's submitted. Yeah, well argued.
judges: Fisher, Paez, Nguyen